[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff herein, Mrs. Rita Chevarella, was injured in a fall in the defendant's supermarket (Super Stop Shop) in Ansonia, Connecticut, on July 19, 1995.
On that date, she entered the store for the purpose of making several purchases for a cookout upon her return home. Upon entering, she proceeded to the rear of the store intending to make a purchase at the deli counter. At one point during her stay, she proceeded across the aisle running along the rear of the store to purchase some rolls which were on display on an end cap near aisle 19.
When she came to within a few feet of the display, she was caused to slip and fall due to a slippery substance on the floor causing her to sustain injuries. The fall occurred at the end of the aisle which displayed various detergents that were for sale.
While she did not see the cause of her fall prior to falling, subsequently she observed a clear substance about the diameter of an apple which caused her to fall. Leading away from the area she observed several drops of a clear substance about the size of a quarter in the vicinity of some double doors. After the fall, her left ankle was sore and she had pain in her right shoulder, upper back and arm. She stopped to purchase one more item and then proceeded to the checkout counter, paid for her merchandise and returned home.
When she was going to the checkout counter, she noticed a single orange cone about 40' to 45' away from the location of her fall.
She did not at the time report her fall to any store employee. CT Page 10270
The next morning she went back to the store at the suggestion of her husband and reported the incident. She then went to Griffin Hospital for medical assistance. At the hospital, she had her ankle x-rayed and the diagnosis was a sprain. An air cast was prescribed and she returned home making no other complaint of any other injuries at the time. She was unable to go to work that day. The pain in her upper body worsened, causing her to return to the hospital where pain medication was prescribed.
About four days later, due to numbness in her arms and shoulders, she visited her physician, a Dr. Fete, who arranged for an MRI which showed a small extrusion. Dr. Fete recommended that she see a neurosurgeon, Dr. Silverstein. Another MRI was performed with the result being negative. Silverstein sent her to therapy. After several visits and feeling that she was not getting better, she stopped the therapy. Mrs. Chevarella then sought treatment on her own, seeking another opinion. She went to see a Dr. Bloomgarden. Another MRI was taken and, as a result, he suggested that she have no surgery. Thereafter, she went to a chiropractor who treated her for about five months. She then went back to Dr. Fette, another MRI was taken with the result being the same, a slight herniation of the C6-7 of the spine.
Not getting any better, she had Dr. Fette refer her to Dr. Gross, a neurologist, where she underwent nerve conduction tests. He referred her to Shoreline Therapy for treatment. Dr. Fette referred her to Dr. Gudin for pain management. Several medications were prescribed including seven or eight epidurals. Dr. Gudin gives her a 15% disability of the whole body.
It should be noted that Mrs. Chevarella treated with Dr. Fette prior to her fall. She was complaining about cervical spasms and also as to her lumbar spine. At that time, Dr. Fette recommended that she undergo an MRI, which was never performed. He also recommended physical therapy, which she also failed to pursue. She failed to tell any of her treating doctors as well as her attorney about her previous experience with Dr. Fette. Only Dr. Sumner, who conducted an independent medical exam (IME) of the defendant and had in his possession all of her medical records, was aware of her previous complaints.
"A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Corcoran v. Jacovino,161 Conn. 462, 465; Kurti v. Becker, 54 Conn. App. 335, 338 (1999).
"For the plaintiff to recover for the breach of a duty owed to her as a CT Page 10271 business invitee she had to allege and prove that the defendant had actual or constructive notice of the presence of the specific unsafe condition that caused her to fall. . . . Either type of notice must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it . . . if the plaintiff, however, alleges an affirmative act of negligence, i.e., that the defendant's conduct created the unsafe condition proof of notice is not necessary." Fuller v. FirstNational Supermarkets, Inc., 38 Conn. App. 299, 301.
Thus, the defendant has "a duty to exercise reasonable care to have and maintain the premises reasonably safe for the reasonably to be anticipated uses the invitee would make of them." Kopjanski v. Festa,160 Conn. 61, 64; Ford v. Hotel and Restaurant Employees and Bartenders'Union, 155 Conn. 24, 33.
In this case, the plaintiff would have the court find that there was notice of the defective condition because of the drops leading away from the area of the fall in the vicinity of the doors at the rear of the store. There is no evidence, circumstantial or direct, that indicates any employee was aware of the condition or how long it remained there. The plaintiff testified that she had no knowledge as to how long the substance was on the floor or where it came from. Evidence did indicate that the location of her fall was adjacent to the area where liquid detergents were being sold. This, however, does not imply notice or how long it was there.
The plaintiff testified that the area around the location of the fall, except for the liquid substance was clear. The substance was described as being clear in nature. Testimony indicated that there were not footprints or cart tracks evident nor was the substance dirty. All of these factors might lead a reasonable person to believe that the condition had not existed for such a reasonable length of time as to give the employee's notice of the condition and an opportunity to correct it.
The court concludes that on the issue of liability it finds for the defendant. While the subjectivity as opposed to the objectivity of the plaintiff's complaints are seriously in issue, the court, because it finds for the defendant on the issue of liability, does not consider the issue of the injuries incurred and the damages resulting therefrom.
Judgment may enter for the defendant.
The Court
By ___________________ CT Page 10272 Curran, J.